(Not for Publication)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| _____ | : | |
| | : | |
| | : | |
| IN RE: | : | Civil No. 97-5127 (RBK) |
| | : | |
| BAYSIDE PRISON LITIGATION | : | **OPINION** |
| | : | |
| | : | |
| | : | |
| _____ | : | |

**KUGLER**, United States District Judge:

Presently before the Court is a motion by all defendants ("Defendants"), seeking an award of summary judgment against Plaintiff Troy Goolsby ("Goolsby"). Further before the Court is a motion by defendants William H. Fauver ("Fauver"), Gary Hilton ("Hilton"), Theodore Roth ("Roth"), Scott Faunce ("Faunce"), and Fred Baker ("Baker") (collectively the "Supervisory Defendants"), seeking an award of summary judgment against Plaintiff David Lopez ("Lopez"). For the reasons set forth below, this Court will deny both motions.

I.      BACKGROUND[1]

This lawsuit, brought pursuant to 42 U.S.C. § 1983 and now approaching its ten-year anniversary before this Court, stems from events alleged to have taken place at Bayside State

---

[1]As the parties and this Court are intimately familiar with the factual background underlying this case, this Opinion will contain only a brief recitation of relevant facts.

Prison ("BSP") in July, August, and September of 1997. During this time period, BSP experienced a "lockdown" following the murder of Senior Corrections Officer Fred Baker by an inmate. The plaintiffs in this lawsuit were inmates at BSP during this lockdown who allege that prison officials violated their civil rights during this time period.

The Complaint in this action has been amended on six occasions. However, all parties in this action were included at the latest in the Fourth Amended Complaint, which was filed before the statute of limitations had expired for any potential plaintiff's claim.[2] On April 25, 2000, Plaintiffs' motion to certify a class action was denied, and Plaintiffs have thereafter proceeded with their individual claims in this case.

## II.   STANDARD FOR SUMMARY JUDGMENT

In both motions, the defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56. Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving

---

[2] The motion to file the Fourth Amended Complaint was filed on July 27, 1999 and granted on September 10, 1999. The Fourth Amended Complaint was docketed on September 27, 1999.

for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### III.  MOTION FOR SUMMARY JUDGMENT AGAINST GOOLSBY

Defendants have moved for summary judgment against Goolsby, claiming that he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e(a).

#### A.  PLRA's Exhaustion Requirement

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [§ 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The Third Circuit has stated that this requirement applies "only if the plaintiff is a prisoner at the time of filing." Abdul-Akbar v. McKelvie, 239 F.3d 307, 314 (3d

Cir. 2001). See also Ahmed v. Dragovich, 297 F.3d 201, 201 (3d Cir. 2002).

The initial Complaint in this matter was filed on October 17, 1997, and did not include Goolsby as a plaintiff. The parties agree that at the time the initial Complaint was filed, Goolsby was incarcerated at BSP. Goolsby became a party to this action by way of the Fourth Amended Complaint. The parties further agree that at the time the Fourth Amended Complaint was filed, Goolsby was no longer incarcerated at BSP. Finally, the parties agree that Goolsby has not exhausted his administrative remedies. However, the parties dispute whether the PLRA's exhaustion requirement applies to Goolsby.

In moving for summary judgment, Defendants argue that the PLRA's exhaustion requirement does in fact apply. They claim that while Goolsby did not actually become a plaintiff in the action until after he was released from custody, his claim should be deemed to have been "brought" in 1997, when the original Complaint was filed, under the "relation back" principle stated in Federal Rule of Civil Procedure 15(c). Accordingly, Defendants argue, the PLRA's exhaustion requirement should apply, as Goolsby was incarcerated at that time. Goolsby rejects this argument. He asserts that this Court should deem his claim to have been brought at the time the Fourth Amended Complaint was filed, as the relation back doctrine does not apply. As Goolsby was not incarcerated at that time, he claims that the PLRA's exhaustion requirement is inapplicable.[3]

    B.     Relation back under Rule 15(c)

Federal Rule of Civil Procedure 15 sets forth rules governing amendments to pleadings. Rule 15(c) specifically sets forth the "relation back" principle. It states that:

---

[3]Goolsby was released from BSP on February 19, 1998.

4

An amendment of a pleading relates back to the date of the original pleading when

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed. R. Civ. P. 15(c).

This doctrine is used primarily in cases when an amendment to a Complaint occurs after the statute of limitations has run for the cause of action. Under the relation back principle, the added claim, defense, or party can be deemed to have been included as of the date when the original Complaint was filed, and therefore considered to be timely notwithstanding the fact that the amendment occurred after the statute of limitations had expired. See Garvin v. City of Philadelphia, 354 F.3d 215, 220 (3d Cir. 2003) ("If the amendment relates back to the date of the filing of the original complaint, the amended complaint is treated, for statute of limitations purposes, as if it had been filed at that time."). Within the context of the PLRA's exhaustion requirement, the relation back doctrine has also been invoked to determine whether an amendment to a Complaint filed before the PLRA's implementation related back to the date of the original Complaint, as the PLRA's exhaustion requirement, which became effective on April 26, 1996, was not retroactively applicable. See Foulk v. Charrier, 262 F.3d 687, 696 (8th Cir. 2001).

In the case presently before this Court, Defendants seek to have this Court apply the relation back principle to the Fourth Amended Complaint's addition of Goolsby as a plaintiff. The Third Circuit has noted that subparagraph (3) of Rule 15(c), while by its language only applicable to the naming of additional defendants, is equally applicable when additional plaintiffs are added to an action as well. In so holding, the Third Circuit quoted the Advisory Committee Note to the 1966 Amendment to Rule 15: "The relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally easier [than that of amendments changing defendants]. Again the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs." Nelson v. County of Allegheny, 60 F.3d 1010, 1014 n.7 (3d Cir. 1995).

Given the Third Circuit's consistent holdings, as well as the language of the Advisory Committee Note, it is clear to this Court that Defendants in this case are seeking to misapply the relation back principle, as they intend to use it to bar Plaintiff from bringing a claim that, but for the relation back doctrine, Plaintiff would indisputably be entitled to bring without having first exhausted his administrative remedies. Rule 15(c)'s relation back doctrine was not intended to be used to limit a plaintiff's ability to expand a suit; rather, the Rule was intended to expand a plaintiff's rights, specifically with regard to the applicable statute of limitation. In analyzing the language of the Rule, the Third Circuit has made this point abundantly clear, as it has stated that "[t]he relation back provision of Rule 15(c) aims to ameliorate the harsh result of the strict application of the statute of limitations." Garvin, 354 F.3d at 220. Moreover, the Third Circuit has further noted that "[t]he 'prejudice' to which the Rule refers is that suffered by one who, for

lack of timely notice that a suit has been instituted, must set about assembling evidence and constructing a defense when the case is already stale," Nelson, 60 F.3d at 1014-15 (quotation omitted), a concern clearly predicated on the potential problems faced with circumventing the statute of limitations.

In the case presently before this Court, Goolsby did not seek to add himself as a plaintiff following the lapse of the applicable statute of limitations, nor does he assert that any of the events took place prior to the effective date of the PLRA's exhaustion requirement. Indeed, rather than becoming a plaintiff by way of being added to the Fourth Amended Complaint, Goolsby – and the scores of plaintiff who were similarly added by way of the Fourth Amended Complaint – could have simply filed a new action with this Court. It is clear to this Court that given these circumstances, applying Rule 15(c)'s relation back principle would run contrary to its proper use.

Defendants further argue that if this Court does not relate Goolsby's claim back to the filing date of the initial Complaint, it will subsequently invite other plaintiffs to skirt the PLRA's exhaustion requirement by waiting until they are no longer incarcerated and then simply becoming plaintiffs by way of amending the Complaint for an already existing action. However, in order to do so, such plaintiffs must be sure that the statute of limitations for their claim has not yet expired, otherwise such plaintiffs would need the relation back doctrine to apply in order to preserve their claim as having been timely filed. In such cases, plaintiffs would face a lose-lose proposition: either their claims would relate back, and they would be deemed to have not exhausted their administrative remedies, or their claims would not relate back, and their claims would not be considered to have been filed before the statute of limitations expired.

Alternatively, if had the statute of limitations not yet expired, a plaintiff would not need to be added by way of an amended Complaint; rather, as is noted above, he could simply file his own individual action. Based on this reasoning, this Court finds Defendants' argument regarding future plaintiffs' ability to abuse the PLRA's exhaustion requirement to be without merit. Accordingly, this Court finds that the filing date of Goolsby's action does not relate back to the filing date of the initial Complaint for purposes of the PLRA's exhaustion requirement. Therefore, since Goolsby's action was brought after his release from BSP, he was not required to exhaust his administrative remedies before bringing this action.

### IV. MOTION FOR SUMMARY JUDGMENT AGAINST LOPEZ

The Supervisory Defendants have also moved for summary judgment against Lopez, claiming that his claims are based on an impermissible theory of respondeat superior. The parties agree that Senior Corrections Officer Baker was murdered on July 30, 1997, and that the lockdown at BSP began that day. Lopez alleges that on August 3, 1997, or the fifth day of the lockdown, he was physically assaulted by several Special Operations Group ("SOG") officers in violation of his constitutional rights. The parties further agree that Lopez did not specifically inform the Supervisory Defendants or other prison authorities of risks to his safety prior to the alleged August 3, 1997 assault. The parties also agree that the Supervisory Defendants did not personally physically assault Lopez.

#### A. Supervisory Liability

It is well settled that "[s]ection 1983 will not support a claim based on a respondeat superior theory of liability." Polk County v. Dodson, 454 U.S. 312, 325 (1981) (citing Monell v.

Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)).  Rather, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

Given this backdrop, the Third Circuit has set forth a four-part test for determining supervisory liability for an alleged Eighth Amendment violation:

> Under this regime, to hold a supervisor liable because his policies or practices led to an Eighth Amendment violation, the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice.

Beers-Capitol v. Whetzel, 256 F.3d 120, 134 (3d Cir. 2001) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)).  This test embodies the Supreme Court's requirement that a plaintiff show that a supervisor acted with "deliberate indifference" in order to set forth a violation under § 1983.  Farmer v. Brennan, 511 U.S. 825 (1994).  Alternatively, the Third Circuit has further held that supervisory liability can be established if a plaintiff can show that a supervisor "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations."  A.M. v. Luzerne County Juvenile Detention Ctr., 372 F.3d 572, 586 (3d Cir. 2004).

As the Supreme Court made clear in Farmer, for purposes of alleging supervisory liability, "it does not matter . . . whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk."  Farmer, 511 U.S. at 843.  Moreover, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."  Id. at 842.  However, "[t]he knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must

9

actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Beers-Capitol, 256 F.3d at 133.

      B.      <u>Analysis</u>

The parties agree that prior to the alleged assault against Lopez, he had not made the supervisory defendants aware of a risk that he would be personally assaulted by the SOG officers. Furthermore, Lopez does not claim that the Supervisory Defendants directed the SOG officers to assault Lopez. The Supervisory Defendants assert that Lopez has not shown them to have been aware of any risk posed to Lopez. Therefore, they argue, Lopez is unable to set forth a case of supervisory liability. Lopez asserts that the Supervisory Defendants were aware of the risk posed to all of the inmates at BSP, including Lopez, and that their failure to act to reduce this risk suffices to constitute deliberate indifference and therefore impose supervisory liability under § 1983. Therefore, the critical issue in the case presently before this Court is whether this Court finds that, taking the facts in a light most favorable to Lopez, the Supervisory Defendants were subjectively aware of the risk posed to Lopez.

In opposing the Supervisory Defendants' motion for summary judgment, Lopez presents this Court with evidence that, at a minimum, suggests a material factual dispute as to whether the Supervisory Defendants possessed the requisite knowledge of the risk posed to all prisoners at BSP at the time Lopez was allegedly assaulted. Discovery has shown that after the lockdown commenced, a number of inmates sought medical attention for various physical injuries, and that on August 2, 1997, some of these developments were related to Faunce by ombudsman Margaret Lebak ("Lebak").

The Supervisory Defendants further argue that even if they were aware of the allegations

10

of abuse made by other inmates, such allegations would be insufficient to constitute a "pattern of past occurrences" that would have made the Supervisory Defendants aware of the risk posed to all inmates at BSP.  See id. at 137 ("[W]e do not believe that two allegations constitute a 'pattern of past occurrences[.]'").  However, the Third Circuit has further stated that "there are situations in which the risk of constitutionally cognizable harm is so great and so obvious that the risk and the failure of supervisory officials to respond will alone support findings of the existence of an unreasonable risk, of knowledge of that unreasonable risk, and of indifference to it."  Sample v. Diecks, 885 F.2d at 1118.  Such may be the case here.  The circumstances at BSP created a situation unlike those presented in most other actions brought by prisoners pursuant to § 1983.  Given the context in which these developments occurred, namely the lockdown of a prison following the murder of a corrections officer, the deployment of SOG officers, subsequent injuries by inmates, and the alleged communications by Lebak to Faunce, this Court finds that Lopez has introduced sufficient evidence that may allow a factfinder to conclude that the Supervisory Defendants possessed actual knowledge of the risk posed to Lopez and the other BSP inmates at the time Lopez was allegedly assaulted and did nothing to attempt to ameliorate this risk.  Accordingly, Lopez does not allege the Supervisory Defendants' liability on the basis of respondeat superior; rather, Lopez has set forth sufficient facts to allow a factfinder to conclude that the Supervisory Defendants acted with "deliberate indifference."

### V.     CONCLUSION

Based on the foregoing reasoning, this Court will deny Defendants' motion for summary judgment against Goolsby and the Supervisory Defendants' motion for summary judgment

against Lopez.  The accompanying Order shall issue today.


Dated:  January 30, 2007                             s/ Robert B. Kugler            
                                                             ROBERT B. KUGLER
                                                            United States District Judge