October 1, 2009

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
Civil Action No. 08-1288

_____

In Regard to the Matter of:

Bayside State Prison                OPINION/REPORT
Litigation                              OF THE
                                    SPECIAL MASTER

KENNETH WEST

        -vs-

WILLIAM H. FAUVER, et al,

        Defendants.

_____


\*     \*     \*     \*

THURSDAY, OCTOBER 1, 2009

\*     \*     \*     \*


BEFORE THE HONORABLE JOHN W. BISSELL, SPECIAL MASTER

October 1, 2009

Page 2

1

2

3

4

5              Transcript of proceedings in the above

6    matter taken by Theresa O. Mastroianni, Certified

7    Court Reporter, license number 30X100085700, and

8    Notary Public of the State of New Jersey at the

9    United States District Court House, One Gerry Plaza,

10   Camden, New Jersey, 08102, commencing at 11:36 AM.

11

12

13

14

15

16

17

18

19              MASTROIANNI & FORMAROLI, INC.

20        Certified Court Reporting & Videoconferencing

21              251 South White Horse Pike

22              Audubon, New Jersey 08106

23                   856-546-1100

24

25

October 1, 2009

Page 3

1

2   A P P E A R A N C E S:

3

4        JAIME KAIGH, ESQUIRE
         32 NORTH BLACK HORSE PIKE
5        BLACKWOOD, NEW JERSEY  08012
         856-232-3337
6        856-232-4561
         ATTORNEYS FOR THE PLAINTIFFS
7

8

9        ROSELLI, GRIEGEL, LOZIER & LAZZARO, PC
         BY:  MARK ROSELLI, ESQUIRE
10            - and -
         BY:  KENNETH W. LOZIER  ESQUIRE
11       1337 STATE HIGHWAY 33
         HAMILTON SQUARE, NEW JERSEY  08690
12       609-586-2257
         ATTORNEYS FOR THE DEFENDANTS
13

14

15

16

17

18

19

20

21

22

23

24

25

October 1, 2009

Page 4

1          JUDGE BISSELL:  We are reopening

2    proceedings in the matter of Kenneth West, docket

3    number 08-1288 and the following will constitute the

4    Special Master's determination regarding his

5    complaint.

6              This opinion/report is being issued

7    pursuant to the directives of the Order of Reference

8    to a Special Master and the Special Master's

9    Agreement and the guiding principles of law which

10   underlie this decision to be applied to the facts

11   upon which it is based as set forth in the jury

12   instructions in the Walker and Mejias jury charges to

13   the extent applicable to the allegations of Mr. West.

14             As finalized after review under Local

15   Civil Rule 52.1, the transcript of this oral opinion

16   will constitute the written report required by

17   paragraph seven of the Order of Reference to a

18   Special Master.

19             Mr. West was housed in F Unit at the

20   time of an incident or one might call a progressive

21   series of incidents thereafter occurring on the 25th

22   of August, 1997 toward the end of the lockdown

23   period.

24             The triggering incident in the dayroom

25   of F Unit at that time I find is most accurately and

October 1, 2009

Page 5

1  credibly described by the testimony of then

2  Corrections Officer Recruit Shirley Tozer, T-O-Z-E-R,

3  now Shirley Royal, when she testified on March 10th,

4  2009.  The excerpt involved here appears between

5  pages 196 and 200 of the transcript generated at that

6  hearing on that date.

7         The questioning begins on this subject:

8         "Question:  Sitting here in this

9  courtroom, do you recognize Inmate Kenneth West?

10        "Answer:  Yes.

11        "Question:  Do you remember what the

12  charge was that you wrote against Inmate Kenneth West

13  and the circumstances surrounding it?

14        "Answer:  .402, being in an

15  unauthorized area.

16        "Question:  Can you tell us why you

17  wrote that charge?

18        "Answer:  The facility had imposed a

19  red line system, put red tape in many, many places

20  and the inmates were not supposed to cross over those

21  red lines, or even actually step on them.

22        "Question:  Was that system implemented

23  after the death of Fred Baker?

24        "Answer:  Yes.

25        "Question:  And do you know what the

October 1, 2009

1    purpose of that was, why they implemented that

2    system?

3                    "Answer:  Officer safety, I would

4    imagine.

5                    "Question:  Was it to sort of give some

6    distance?

7                    "Answer:  To keep you out of the

8    space -- the direct space, you know.

9                    "Question:  Between an officer and an

10   inmate?

11                   "Answer:  Yes.

12                   "Question:  Okay.  Do you remember

13   specifically when that red line system was put in

14   place?  Do you have a recollection?

15                   "Answer:  I can only say August.

16                   "Question:  Okay.  Now, August 25th,

17   1997, you told us you were working second shift in F

18   Unit; is that correct?

19                   "Answer:  Yes.

20                   "Question:  And did there come a time

21   when there was an incident with Inmate West that led

22   to a charge?

23                   "Answer:  Yes.

24                   "Question:  Can you tell us what you

25   recall?

 1                "Answer:  The inmate approached the

 2      area, came across the red line, and when he was told

 3      that he couldn't get on to the red line, he was

 4      agitated by that and walked away, and called me an

 5      asshole.

 6                "Question:  Do you remember why he

 7      entered the area?

 8                "Answer:  He, according to what I

 9      recall, he was bringing mail, maybe to be mailed.  I

10      don't think he was picking up mail.  He was bringing

11      mail to be mailed out.

12                "Question:  And you were there at the

13      desk or the podium?

14                "Answer:  Yes.

15                "Question:  And was it a podium, was it

16      a desk, how would you describe the setup?

17                "Answer:  Podium, tall, like a work --

18      a gray metal -- I don't know what they really are

19      technically called, but we called them a podium.

20                "Question:  And was there a chair for

21      you to sit at?

22                "Answer:  Yeah, there is usually a

23      stool, couple chairs, plastic chair, maybe.

24                "Question:  But this podium would be

25      higher than a normal table or desk?

1                    Answer:  Oh, yes.  If I'm standing at

2       the podium at my height, my eyes would just come

3       across the top of it.

4                    "Question:  And then the chair would

5       really be a stool of some type?

6                    "Answer:  Yes.

7                    "Question:  Now, do you recall actually

8       seeing Inmate West enter the area and cross the red

9       line?

10                   "Answer:  Yes.

11                   "Question:  Okay.  And what did you do

12      when you saw that?

13                   "Answer:  I told him he was on the red

14      line, and that's obviously restricted area,

15      unauthorized area for any convict to be in.

16                   "Question:  And you told him that

17      because that's what the rule was, that he was not

18      supposed to be in that area, correct?

19                   "Answer:  Yes.

20                   "Question:  And then his response, I

21      think you said he sort of became agitated in some

22      type?

23                   "Answer:  Yes.

24                   "Question:  In some fashion?  And can

25      you tell us more of what you recall?

1           "Answer:  He called me an asshole, and

2    walked to the phones and proceeded to attempt to make

3    a phone call.

4           "Question:  Okay.  Now, when you first

5    told him that he had crossed the line, at that point,

6    was it your intention to issue a disciplinary of any

7    type?

8           "Answer:  No.  Not at all.

9           "Question:  After he called you an

10   asshole, did you then decide that you were going to

11   write a disciplinary for him coming across the red

12   line?

13          "Answer:  Because of his attitude and

14   agitation, not necessarily referring to me or anybody

15   as an asshole."

16          That's a description of the events at

17   that time.  Ms. Tozer further testified, and once

18   again I believe accurately, that Mr. West was asked

19   to go to his bunk to get his ID which he did and

20   return to the area.  And at this time two officers

21   essentially on a roving patrol, Officers Koerner and

22   Fronczek were there, they cuffed Mr. West and held

23   him in the day room without any particular incident

24   waiting for an escort unit to arrive to take him to

25   lockup.

1          That escort unit did arrive, it was a

2    Bayside Prisoner Response Team, not a SOG team,

3    although they were geared up, it appears.  That

4    response team consisted of Officers David Vastano,

5    V-A-S-T-A-N-O, Ronald Callahan, William Nessen,

6    N-E-S-S-E-N, Arwin Dusenko, D-U-S-E-N-K-O, and

7    William Ruff, and their supervisor, Sergeant Donald

8    Zawojski.

9          At this point the evidence somewhat

10   diverges in connection with what occurred when the

11   response team endeavored to secure Mr. West for a

12   transport to B Unit lockup.

13         The events in question eventually led

14   to an Internal Affairs investigation and a

15   significant point or possible event in that

16   investigation focused around whether or not the

17   inmate, Mr. West, kicked one of the officers in the

18   prison response team, namely Officer Ruff.

19         A number of statements were taken, most

20   of them introduced into evidence, either with

21   separate exhibit numbers or as a part of P-172 which

22   is the full administrative investigation report from

23   Internal Affairs of this incident.

24         Reports from Mr. Koerner with regard to

25   when Mr. West allegedly kicked Mr. Ruff included a

October 1, 2009

1    statement that it occurred when they were exiting F

2    Unit, and another one when the response team escorted

3    him.

4              A report of Sergeant Zawojski, by

5    implication at least, indicated that the kick

6    actually happened in F Unit.  And another report of

7    his says:  "As we began to remove Inmate West from

8    the corner of F Unit, he kicked Officer Ruff in the

9    knee".

10             Officer Ruff, in one of his reports,

11   indicated that he was kicked in the right leg from

12   behind.  Once again, with an inference that it

13   occurred in F Unit itself in the immediate vicinity

14   of their exiting the premises.

15             Officer Nessen said this occurred as we

16   started to escort Mr. West.  Officer Vastano,

17   interestingly enough in his report appearing at Bates

18   stamp page number 5902 in P-172, did not mention that

19   the kicking occurred.

20             Another officer's report appearing at

21   5903 says, while we were escorting the inmate to

22   lockup.  Mr. Callahan indicated it was while we were

23   attempting to take control of the inmate for

24   transport to lockup.  Endeavoring to read these

25   reports and make a determination at least as to what

October 1, 2009

1   the response team's position was leads me to draw the

2   inference, I think appropriately so, that according

3   to them, this incident occurred, and the kicking

4   actually did, in fact, take place while they were in

5   F Unit, albeit at the point of exiting.

6           Ms. Tozer, however, in the day room, in

7   the immediate vicinity of this event, whose decision

8   it was to write a charge (even though it may not yet

9   have been written), and in a position definitely to

10  observe what was taking place in that immediate area,

11  makes no mention whatsoever of Inmate West kicking

12  Mr. Ruff or any other officer.  Her statement, I

13  think marked into evidence independently as Exhibit

14  D-620, but nevertheless also appearing as a part of

15  P-172 beginning at Bates stamp page 5894, after her

16  discussion of the preliminary events continues on

17  page 5895:  "At this time I saw the response team

18  enter the unit and escort Inmate West out of the

19  unit, down the steps and onto the grassy area in the

20  direction of A/B Unit.  I then returned to my normal

21  duties."

22          So it's clear from that statement

23  relatively contemporaneous, September 11th, 1997,

24  that she did observe this segment at least of Mr.

25  West's custody by the response team.  She continues

October 1, 2009

1    in that statement and I continue this quote:  "At no

2    time did I witness any unusual incidents.  There was

3    at no time any assaults by compound patrol or the

4    response team toward this inmate nor did I witness

5    the assault of any officer from the response team or

6    compound patrol by this inmate."

7              Now, in the course of her testimony

8    here in court Ms. Tozer, one might say, somewhat

9    compromised that statement and in some instances

10   indicated that she may not have been watching these

11   events surrounding Mr. West quite as completely as

12   she was, ostensibly due to other duties.  I'm not

13   exactly sure why this approach took place.  Ms. Tozer

14   has been retired from Bureau of Prisons employment

15   for some time.  Perhaps it's the product of her

16   realizing that her written statement contradicted

17   those of others.  But in any event, certainly I find

18   it more credible that her statement at the time, when

19   not a part of this response team and with no need, if

20   you will, to get the story straight, stated very

21   clearly that at the same point in time when the other

22   members of the response team are alleging that

23   Mr. West kicked Mr. Ruff, she saw no such thing.

24              And so I reach the determination here

25   that that didn't happen, that he did not kick Mr.

October 1, 2009

Page 14

 1   Ruff.

 2              I find further that there were, indeed,

 3   injuries inflicted by the response team upon Mr. West

 4   as reflected in P-171 which are the photographs,

 5   albeit by photocopy, and also as discussed and

 6   described at some length in the Internal Affairs

 7   investigation report.

 8              I don't think it's necessary to

 9   reiterate those at length, that report is in evidence

10   and can be consulted for that purpose.

11              These injuries happily were relatively

12   minor injuries, cuts and bruises sustained due to the

13   employment of excessive and, frankly, unnecessary

14   force in the course of his transport to the lockup

15   unit.

16              Upon arrival at the lockup unit I find,

17   as Mr. West testified, that his shoulder, which was

18   indeed injured as the pictures and analysis reflect,

19   was slammed into the door of the unit in order to

20   open it.  This, once again, is consistent with a

21   rough and unnecessary and excessive use of force in

22   the course of the transport of this plaintiff.

23              I find that the reports and testimony

24   of the response team members that the plaintiff was

25   combative in the course of his transport is not

1    credible and like the fabricated kicking incident,

2    was employed here as a shield, so to speak, for their

3    own misconduct and use of excessive force in the

4    transport.

5              However, I find, as reflected in the

6    photographs taken on the 27th of August, some

7    two days later, that the injuries depicted in those

8    photographs, including those to plaintiff's shoulder

9    resulting from the use of it to open the door into

10   the unit, are the injuries which, in fact, occurred.

11   I do not find it credible as described by Mr. West

12   that other events transpiring supposedly on that day

13   (such as his head being slammed into the B Unit

14   podium) and later, upon his imminent departure to

15   Trenton State Prison, in fact, occurred.  I find

16   this, frankly, is an effort to gild the lily and

17   enhance his claims in this matter against the

18   facility and its officers.

19              I do not find that these efforts, under

20   any legal or equitable doctrine, bar his recovery for

21   the injuries which he did, in fact, sustain.  But I

22   do not find them credible to support the allegations,

23   among other things, that his head was slammed into

24   the podium and/or that he was otherwise mistreated in

25   the moments and minutes subsequent to his arrival at

October 1, 2009

1    the facility.

2                   He was, of course, seen by medical

3    personnel as best my recollection recalls, both on

4    the 25th in the evening itself and later on the 27th

5    with reports of the injuries actually sustained and

6    not those which he has fabricated.

7                   With regard to specifically his alleged

8    assault by officers on the eve of his relocation to

9    Trenton State Prison, those are not substantiated

10   and, frankly, make no sense.  Here is a man already

11   marked to some extent and with reports to that

12   effect.  And for the officers at this point to

13   reassault him with the potential of leaving

14   additional evidence of assaults and injuries, which

15   would have to be revealed and reviewed in either an

16   exit medical exam from Bayside State Prison or an

17   intake medical exam at Trenton State Prison or both,

18   makes no sense and would indicate the willingness of

19   these custodial officers, now about to be rid of a

20   particular inmate, to run a substantial risk to their

21   own careers.  And once again, I see no grounds for it

22   and it makes no inherent sense either.  There is no

23   reason to take this risk as a matter of logic.  And

24   with the claims of these injuries otherwise

25   unsubstantiated, I find that they have not been

October 1, 2009

1  proven here.

2          There were also indications from the

3  record that, upon his arrival at Trenton State

4  Prison, now out of the clutches, if you will, of

5  Bayside and its officers, he sought no follow-up

6  medical treatment.  One would have expected such a

7  request had he been beaten only hours before.

8          As far as the scope and extent of his

9  injuries are concerned, Mr. West did have lingering

10 shoulder pain over time, although it has lessened by

11 now.  It did restrict his weight-lifting activities,

12 but there was no significant permanency from any of

13 these injuries and, in fact, when being admitted to

14 Southwoods State Prison slightly less than a year

15 later, on or about the 18th of June of 1998, he made

16 no complaints of any lingering injuries afflicting

17 him at that time.

18         There was, therefore, to the extent

19 described and found above indeed excessive,

20 unnecessary and sadistic force employed upon Mr. West

21 within the comtemplation of those legal principles.

22 However, in light of the fact that the injuries and

23 hence this punishment inflicted upon him in the

24 course of his transit to the lockup unit was not

25 prolonged, repeated or resulting in extremely severe

1  injuries, I find, therefore, that while this is

2  actionable for the recovery of compensatory damages,

3  I do not find that this assault visited upon him rose

4  to the level of being so egregious as to support a

5  claim for punitive damages, at least against the

6  identified officers here; once again, as the punitive

7  damages standard is applied in the jury instructions

8  mentioned above and incorporated here by reference.

9          I realize, of course, that there may

10  come a time when an issue arises as to whether there

11  is any significance of this conduct with regard to

12  the establishment of supervisory liability and/or

13  punitive damages in that respect.  However, that

14  awaits another day.  And I will impose no punitive

15  damages here.

16          Finally, although not every item of

17  evidence has been discussed in this opinion/report,

18  all evidence presented to the Special Master was

19  reviewed and considered.

20          This is a case (unlike most) where we

21  do, indeed, have identifiable defendants, namely the

22  members of the Bayside State Prison Response Team.  I

23  might add that I find no basis for any liability

24  against either the podium officer identified

25  previously or the two initial responders who placed

October 1, 2009

Page 19

1    this man in handcuffs.  The injuries were inflicted

2    by the response team.  I find that the injury

3    inflicted here was actionable.  I find that although

4    originally and initially acute, it has not remained

5    significantly permanent with any major continuing

6    pain or significant restriction on Mr. West's

7    activities.

8                Accordingly, I recommend in this report

9    that the district court enter an award of

10   compensatory damages in the amount of $4,500 in Mr.

11   West's favor and that that judgment may specifically

12   be entered in this matter against the members of the

13   response team, David Vastano, Ronald Callahan,

14   William Nessen, Arwin Dusenko, William Ruff and

15   Donald Zawojski to the extent that any of them are

16   named defendants in this action.  That frankly is

17   something that's not at my fingertips, but if they

18   are, then the case has been proven as to them.

19              (Hearing Adjourned)

20

21

22

23

24

25

October 1, 2009

1                C E R T I F I C A T E

2

3        I, Theresa O. Mastroianni, a Notary Public and

4   Certified Shorthand Reporter of the State of New

5   Jersey, do hereby certify that the foregoing is a

6   true and accurate transcript of the testimony as

7   taken stenographically by and before me at the time,

8   place, and on the date hereinbefore set forth.

9        I DO FURTHER CERTIFY that I am neither a

10   relative nor employee nor attorney nor counsel of any

11   of the parties to this action, and that I am neither

12   a relative nor employee of such attorney or counsel,

13   and that I am not financially interested in the

14   action.

15

16

17

18

19   *Theresa O Mastroianni*
     Theresa O. Mastroianni, C.S.R.
20   Notary Public, State of New Jersey
     My Commission Expires May 5, 2010
21   Certificate No. XIO857
     Date:  October 1, 2009
22

23

24

25

## A

accurate 20:6
accurately 4:25
  9:18
action 1:2 19:16
  20:11,14
actionable 18:2
  19:3
activities 17:11
  19:7
acute 19:4
add 18:23
additional 16:14
Adjourned
  19:19
administrative
  10:22
admitted 17:13
Affairs 10:14,23
  14:6
afflicting 17:16
agitated 7:4 8:21
agitation 9:14
Agreement 4:9
al 1:9
albeit 12:5 14:5
allegations 4:13
  15:22
alleged 16:7
allegedly 10:25
alleging 13:22
amount 19:10
analysis 14:18
and/or 15:24
  18:12
Answer 5:10,14
  5:18,24 6:3,7
  6:11,15,19,23
  7:1,8,14,17,22
  8:1,6,10,13,19
  8:23 9:1,8,13
anybody 9:14
appearing 11:17
  11:20 12:14
appears 5:4 10:3

applicable 4:13
applied 4:10
  18:7
approach 13:13
approached 7:1
appropriately
  12:2
area 5:15 7:2,7
  8:8,14,15,18
  9:20 12:10,19
arises 18:10
arrival 14:16
  15:25 17:3
arrive 9:24 10:1
Arwin 10:6
  19:14
asked 9:18
assault 13:5 16:8
  18:3
assaults 13:3
  16:14
asshole 7:5 9:1
  9:10,15
attempt 9:2
attempting
  11:23
attitude 9:13
attorney 20:10
  20:12
ATTORNEYS
  3:6,12
Audubon 2:22
August 4:22
  6:15,16 15:6
awaits 18:14
award 19:9
A/B 12:20

## B

B 10:12 15:13
Baker 5:23
bar 15:20
based 4:11
basis 18:23
Bates 11:17
  12:15

Bayside 1:5 10:2
  16:16 17:5
  18:22
beaten 17:7
began 11:7
beginning 12:15
begins 5:7
believe 9:18
best 16:3
BISSELL 1:21
  4:1
BLACK 3:4
BLACKWOOD
  3:5
bringing 7:9,10
bruises 14:12
bunk 9:19
Bureau 13:14

## C

C 3:2 20:1,1
call 4:20 9:3
Callahan 10:5
  11:22 19:13
called 7:4,19,19
  9:1,9
Camden 2:10
careers 16:21
case 18:20 19:18
certainly 13:17
Certificate
  20:21
Certified 2:6,20
  20:4
certify 20:5,9
chair 7:20,23 8:4
chairs 7:23
charge 5:12,17
  6:22 12:8
charges 4:12
circumstances
  5:13
Civil 1:2 4:15
claim 18:5
claims 15:17
  16:24

clear 12:22
clearly 13:21
clutches 17:4
combative 14:25
come 6:20 8:2
  18:10
coming 9:11
commencing
  2:10
Commission
  20:20
compensatory
  18:2 19:10
complaint 4:5
complaints
  17:16
completely
  13:11
compound 13:3
  13:6
compromised
  13:9
comtemplation
  17:21
concerned 17:9
conduct 18:11
connection
  10:10
considered
  18:19
consisted 10:4
consistent 14:20
constitute 4:3,16
consulted 14:10
contemporane...
  12:23
continue 13:1
continues 12:16
  12:25
continuing 19:5
contradicted
  13:16
control 11:23
convict 8:15
corner 11:8
correct 6:18

8:18
Corrections 5:2
counsel 20:10,12
couple 7:23
course 13:7
  14:14,22,25
  16:2 17:24
  18:9
court 1:1 2:7,9
  2:20 13:8 19:9
courtroom 5:9
credible 13:18
  15:1,11,22
credibly 5:1
cross 5:20 8:8
crossed 9:5
cuffed 9:22
custodial 16:19
custody 12:25
cuts 14:12
C.S.R 20:19

## D

damages 18:2,5
  18:7,13,15
  19:10
date 5:6 20:8,21
David 10:4
  19:13
day 9:23 12:6
  15:12 18:14
dayroom 4:24
days 15:7
death 5:23
decide 9:10
decision 4:10
  12:7
defendants 1:10
  3:12 18:21
  19:16
definitely 12:9
departure 15:14
depicted 15:7
describe 7:16
described 5:1
  14:6 15:11

17:19
description 9:16
desk 7:13,16,25
determination
4:4 11:25
13:24
direct 6:8
direction 12:20
directives 4:7
disciplinary 9:6
9:11
discussed 14:5
18:17
discussion 12:16
distance 6:6
district 1:1,2 2:9
19:9
diverges 10:10
docket 4:2
doctrine 15:20
Donald 10:7
19:15
door 14:19 15:9
draw 12:1
due 13:12 14:12
Dusenko 10:6
19:14
duties 12:21
13:12
D-U-S-E-N-K-O
10:6
D-620 12:14

E
E 3:2,2 20:1,1
effect 16:12
effort 15:16
efforts 15:19
egregious 18:4
either 10:20
16:15,22 18:24
employed 15:2
17:20
employee 20:10
20:12
employment

13:14 14:13
endeavored
10:11
Endeavoring
11:24
enhance 15:17
enter 8:8 12:18
19:9
entered 7:7
19:12
equitable 15:20
escort 9:24 10:1
11:16 12:18
escorted 11:2
escorting 11:21
ESQUIRE 3:4,9
3:10
essentially 9:21
establishment
18:12
et 1:9
eve 16:8
evening 16:4
event 10:15 12:7
13:17
events 9:16
10:13 12:16
13:11 15:12
eventually 10:13
evidence 10:9,20
12:13 14:9
16:14 18:17,18
exactly 13:13
exam 16:16,17
excerpt 5:4
excessive 14:13
14:21 15:3
17:19
exhibit 10:21
12:13
exit 16:16
exiting 11:1,14
12:5
expected 17:6
Expires 20:20
extent 4:13

16:11 17:8,18
19:15
extremely 17:25
eyes 8:2

F
F 4:19,25 6:17
11:1,6,8,13
12:5 20:1
fabricated 15:1
16:6
facility 5:18
15:18 16:1
fact 12:4 15:10
15:15,21 17:13
17:22
facts 4:10
far 17:8
fashion 8:24
FAUVER 1:9
favor 19:11
finalized 4:14
Finally 18:16
financially
20:13
find 4:25 13:17
14:2,16,23
15:5,11,15,19
15:22 16:25
18:1,3,23 19:2
19:3
fingertips 19:17
first 9:4
focused 10:16
following 4:3
follow-up 17:5
force 14:14,21
15:3 17:20
foregoing 20:5
FORMAROLI
2:19
forth 4:11 20:8
found 17:19
frankly 14:13
15:16 16:10
19:16

Fred 5:23
Fronczek 9:22
full 10:22
further 9:17
14:2 20:9

G
geared 10:3
generated 5:5
Gerry 2:9
gild 15:16
give 6:5
go 9:19
going 9:10
grassy 12:19
gray 7:18
GRIEGEL 3:9
grounds 16:21
guiding 4:9

H
H 1:9
HAMILTON
3:11
handcuffs 19:1
happen 13:25
happened 11:6
happily 14:11
head 15:13,23
hearing 5:6
19:19
height 8:2
held 9:22
hereinbefore
20:8
higher 7:25
HIGHWAY
3:11
HONORABLE
1:21
Horse 2:21 3:4
hours 17:7
House 2:9
housed 4:19

I

ID 9:19
identifiable
18:21
identified 18:6
18:24
imagine 6:4
immediate 11:13
12:7,10
imminent 15:14
implemented
5:22 6:1
implication 11:5
impose 18:14
imposed 5:18
incident 4:20,24
6:21 9:23
10:23 12:3
15:1
incidents 4:21
13:2
included 10:25
including 15:8
incorporated
18:8
independently
12:13
indicate 16:18
indicated 11:5
11:11,22 13:10
indications 17:2
inference 11:12
12:2
inflicted 14:3
17:23 19:1,3
inherent 16:22
initial 18:25
initially 19:4
injured 14:18
injuries 14:3,11
14:12 15:7,10
15:21 16:5,14
16:24 17:9,13
17:16,22 18:1
19:1
injury 19:2
inmate 5:9,12

6:10,21 7:1 8:8
10:17 11:7,21
11:23 12:11,18
13:4,6 16:20
**inmates** 5:20
**instances** 13:9
**instructions**
4:12 18:7
**intake** 16:17
**intention** 9:6
**interested** 20:13
**interestingly**
11:17
**Internal** 10:14
10:23 14:6
**introduced**
10:20
**investigation**
10:14,16,22
14:7
**involved** 5:4
**issue** 9:6 18:10
**issued** 4:6
**item** 18:16

**J**
**JAIME** 3:4
**Jersey** 1:2 2:8,10
2:22 3:5,11
20:5,20
**JOHN** 1:21
**JUDGE** 4:1
**judgment** 19:11
**June** 17:15
**jury** 4:11,12
18:7

**K**
**KAIGH** 3:4
**keep** 6:7
**Kenneth** 1:7
3:10 4:2 5:9,12
**kick** 11:5 13:25
**kicked** 10:17,25
11:8,11 13:23
**kicking** 11:19

12:3,11 15:1
**knee** 11:9
**know** 5:25 6:8
7:18
**Koerner** 9:21
10:24

**L**
**law** 4:9
**LAZZARO** 3:9
**leads** 12:1
**leaving** 16:13
**led** 6:21 10:13
**leg** 11:11
**legal** 15:20
17:21
**length** 14:6,9
**lessened** 17:10
**level** 18:4
**liability** 18:12
18:23
**license** 2:7
**light** 17:22
**lily** 15:16
**line** 5:19 6:13
7:2,3 8:9,14
9:5,12
**lines** 5:21
**lingering** 17:9
17:16
**Litigation** 1:6
**Local** 4:14
**lockdown** 4:22
**lockup** 9:25
10:12 11:22,24
14:14,16 17:24
**logic** 16:23
**LOZIER** 3:9,10

**M**
**mail** 7:9,10,11
**mailed** 7:9,11
**major** 19:5
**man** 16:10 19:1
**March** 5:3
**MARK** 3:9

**marked** 12:13
16:11
**Master** 1:6,21
4:8,18 18:18
**Master's** 4:4,8
**Mastroianni** 2:6
2:19 20:3,19
**matter** 1:4 2:6
4:2 15:17
16:23 19:12
**medical** 16:2,16
16:17 17:6
**Mejias** 4:12
**members** 13:22
14:24 18:22
19:12
**mention** 11:18
12:11
**mentioned** 18:8
**metal** 7:18
**minor** 14:12
**minutes** 15:25
**misconduct** 15:3
**mistreated**
15:24
**moments** 15:25

**N**
**N** 3:2
**named** 19:16
**necessarily** 9:14
**necessary** 14:8
**need** 13:19
**neither** 20:9,11
**Nessen** 10:5
11:15 19:14
**nevertheless**
12:14
**New** 1:2 2:8,10
2:22 3:5,11
20:4,20
**normal** 7:25
12:20
**NORTH** 3:4
**Notary** 2:8 20:3
20:20

**number** 2:7 4:3
10:19 11:18
**numbers** 10:21
**N-E-S-S-E-N**
10:6

**O**
**O** 2:6 20:3,19
**observe** 12:10
12:24
**obviously** 8:14
**occurred** 10:10
11:1,13,15,19
12:3 15:10,15
**occurring** 4:21
**October** 1:15
20:21
**officer** 5:2 6:3,9
10:18 11:8,10
11:15,16 12:12
13:5 18:24
**officers** 9:20,21
10:4,17 15:18
16:8,12,19
17:5 18:6
**officer's** 11:20
**Oh** 8:1
**Okay** 6:12,16
8:11 9:4
**once** 9:17 11:12
14:20 16:21
18:6
**open** 14:20 15:9
**opinion** 4:15
**opinion/report**
1:5 4:6 18:17
**oral** 4:15
**order** 4:7,17
14:19
**originally** 19:4
**ostensibly** 13:12

**P**
**P** 3:2,2
**page** 11:18
12:15,17

**pages** 5:5
**pain** 17:10 19:6
**paragraph** 4:17
**part** 10:21 12:14
13:19
**particular** 9:23
16:20
**parties** 20:11
**patrol** 9:21 13:3
13:6
**PC** 3:9
**period** 4:23
**permanency**
17:12
**permanent** 19:5
**personnel** 16:3
**phone** 9:3
**phones** 9:2
**photocopy** 14:5
**photographs**
14:4 15:6,8
**picking** 7:10
**pictures** 14:18
**Pike** 2:21 3:4
**place** 6:14 12:4
12:10 13:13
20:8
**placed** 18:25
**places** 5:19
**plaintiff** 14:22
14:24
**PLAINTIFFS**
3:6
**plaintiff's** 15:8
**plastic** 7:23
**Plaza** 2:9
**podium** 7:13,15
7:17,19,24 8:2
15:14,24 18:24
**point** 9:5 10:9
10:15 12:5
13:21 16:12
**position** 12:1,9
**possible** 10:15
**potential** 16:13
**preliminary**

12:16
**premises** 11:14
**presented** 18:18
**previously** 18:25
**principles** 4:9
  17:21
**prison** 1:5 10:18
  15:15 16:9,16
  16:17 17:4,14
  18:22
**Prisoner** 10:2
**Prisons** 13:14
**proceeded** 9:2
**proceedings** 2:5
  4:2
**product** 13:15
**progressive** 4:20
**prolonged** 17:25
**proven** 17:1
  19:18
**Public** 2:8 20:3
  20:20
**punishment**
  17:23
**punitive** 18:5,6
  18:13,14
**purpose** 6:1
  14:10
**pursuant** 4:7
**put** 5:19 6:13
**P-171** 14:4
**P-172** 10:21
  11:18 12:15

**Q**

**question** 5:8,11
  5:16,22,25 6:5
  6:9,12,16,20
  6:24 7:6,12,15
  7:20,24 8:4,7
  8:11,16,20,24
  9:4,9 10:13
**questioning** 5:7
**quite** 13:11
**quote** 13:1

**R**

**R** 3:2 20:1
**reach** 13:24
**read** 11:24
**realize** 18:9
**realizing** 13:16
**really** 7:18 8:5
**reason** 16:23
**reassault** 16:13
**recall** 6:25 7:9
  8:7,25
**recalls** 16:3
**recognize** 5:9
**recollection** 6:14
  16:3
**recommend**
  19:8
**record** 17:3
**recovery** 15:20
  18:2
**Recruit** 5:2
**red** 5:19,19,21
  6:13 7:2,3 8:8
  8:13 9:11
**reference** 4:7,17
  18:8
**referring** 9:14
**reflect** 14:18
**reflected** 14:4
  15:5
**regard** 1:4 10:24
  16:7 18:11
**regarding** 4:4
**reiterate** 14:9
**relative** 20:10,12
**relatively** 12:23
  14:11
**relocation** 16:8
**remained** 19:4
**remember** 5:11
  6:12 7:6
**remove** 11:7
**reopening** 4:1
**repeated** 17:25
**report** 4:16

10:22 11:4,6
  11:17,20 14:7
  14:9 19:8
**Reporter** 2:7
  20:4
**Reporting** 2:20
**reports** 10:24
  11:10,25 14:23
  16:5,11
**request** 17:7
**required** 4:16
**respect** 18:13
**responders**
  18:25
**response** 8:20
  10:2,4,11,18
  11:2 12:11,17
  12:25 13:4,5
  13:19,22 14:3
  14:24 18:22
  19:2,13
**restrict** 17:11
**restricted** 8:14
**restriction** 19:6
**resulting** 15:9
  17:25
**retired** 13:14
**return** 9:20
**returned** 12:20
**revealed** 16:15
**review** 4:14
**reviewed** 16:15
  18:19
**rid** 16:19
**right** 11:11
**risk** 16:20,23
**Ronald** 10:5
  19:13
**room** 9:23 12:6
**rose** 18:3
**ROSELLI** 3:9,9
**rough** 14:21
**roving** 9:21
**Royal** 5:3
**Ruff** 10:7,18,25
  11:8,10 12:12

13:23 14:1
  19:14
**rule** 4:15 8:17
**run** 16:20

**S**

**S** 3:2
**sadistic** 17:20
**safety** 6:3
**saw** 8:12 12:17
  13:23
**says** 11:7,21
**scope** 17:8
**second** 6:17
**secure** 10:11
**see** 16:21
**seeing** 8:8
**seen** 16:2
**segment** 12:24
**sense** 16:10,18
  16:22
**separate** 10:21
**September**
  12:23
**Sergeant** 10:7
  11:4
**series** 4:21
**set** 4:11 20:8
**setup** 7:16
**seven** 4:17
**severe** 17:25
**shield** 15:2
**shift** 6:17
**Shirley** 5:2,3
**Shorthand** 20:4
**shoulder** 14:17
  15:8 17:10
**significance**
  18:11
**significant** 10:15
  17:12 19:6
**significantly**
  19:5
**sit** 7:21
**Sitting** 5:8
**slammed** 14:19

15:13,23
**slightly** 17:14
**SOG** 10:2
**somewhat** 10:9
  13:8
**sort** 6:5 8:21
**sought** 17:5
**South** 2:21
**Southwoods**
  17:14
**space** 6:8,8
**speak** 15:2
**Special** 1:6,21
  4:4,8,8,18
  18:18
**specifically** 6:13
  16:7 19:11
**SQUARE** 3:11
**stamp** 11:18
  12:15
**standard** 18:7
**standing** 8:1
**started** 11:16
**State** 1:5 2:8
  3:11 15:15
  16:9,16,17
  17:3,14 18:22
  20:4,20
**stated** 13:20
**statement** 11:1
  12:12,22 13:1
  13:9,16,18
**statements**
  10:19
**States** 1:1 2:9
**stenographica...**
  20:7
**step** 5:21
**steps** 12:19
**stool** 7:23 8:5
**story** 13:20
**straight** 13:20
**subject** 5:7
**subsequent**
  15:25
**substantial**

| | | | | |
|---|---|---|---|---|
| 16:20 | 20:19 | 15:13 17:24 | 16:18 | **25th** 4:21 6:16 |
| **substantiated** 16:9 | **thing** 13:23 | **United** 1:1 2:9 | **witness** 13:2,4 | 16:4 |
| **supervisor** 10:7 | **things** 15:23 | **unnecessary** 14:13,21 17:20 | **work** 7:17 | **251** 2:21 |
| **supervisory** 18:12 | **think** 7:10 8:21 12:2,13 14:8 | **unsubstantiated** 16:25 | **working** 6:17 | **27th** 15:6 16:4 |
| **support** 15:22 18:4 | **THURSDAY** 1:15 | **unusual** 13:2 | **write** 9:11 12:8 | **3** |
| **supposed** 5:20 8:18 | **time** 4:20,25 6:20 9:17,20 | **use** 14:21 15:3,9 | **written** 4:16 12:9 13:16 | **30X100085700** 2:7 |
| **supposedly** 15:12 | 12:17 13:2,3 13:15,18,21 | **usually** 7:22 | **wrote** 5:12,17 | **32** 3:4 |
| **sure** 13:13 | 17:10,17 18:10 20:7 | **V** | **X** | **33** 3:11 |
| **surrounding** 5:13 13:11 | **told** 6:17 7:2 8:13,16 9:5 | **Vastano** 10:4 11:16 19:13 | **XIO857** 20:21 | **4** |
| **sustain** 15:21 | **top** 8:3 | **vicinity** 11:13 12:7 | **Y** | **402** 5:14 |
| **sustained** 14:12 16:5 | **Tozer** 5:2 9:17 12:6 13:8,13 | **Videoconfere...** 2:20 | **Yeah** 7:22 | **5** |
| **system** 5:19,22 6:2,13 | **transcript** 2:5 4:15 5:5 20:6 | **visited** 18:3 | **year** 17:14 | **5** 20:20 |
| **T** | **transit** 17:24 | **vs** 1:8 | **Z** | **52.1** 4:15 |
| **T** 20:1,1 | **transpiring** 15:12 | **V-A-S-T-A-N-O** 10:5 | **Zawojski** 10:8 11:4 19:15 | **5894** 12:15 |
| **table** 7:25 | **transport** 10:12 11:24 14:14,22 | **W** | **$** | **5895** 12:17 |
| **take** 9:24 11:23 12:4 16:23 | 14:25 15:4 | **W** 1:21 3:10 | **$4,500** 19:10 | **5902** 11:18 |
| **taken** 2:6 10:19 15:6 20:7 | **treatment** 17:6 | **waiting** 9:24 | **0** | **5903** 11:21 |
| **tall** 7:17 | **Trenton** 15:15 16:9,17 17:3 | **walked** 7:4 9:2 | **08-1288** 1:2 4:3 | **6** |
| **tape** 5:19 | **triggering** 4:24 | **Walker** 4:12 | **08012** 3:5 | **609-586-2257** 3:12 |
| **team** 10:2,2,4,11 10:18 11:2 | **true** 20:6 | **watching** 13:10 | **08102** 2:10 | **8** |
| 12:17,25 13:4 13:5,19,22 | **two** 9:20 15:7 18:25 | **weight-lifting** 17:11 | **08106** 2:22 | **856-232-3337** 3:5 |
| 14:3,24 18:22 19:2,13 | **type** 8:5,22 9:7 | **West** 1:7 4:2,13 4:19 5:9,12 | **08690** 3:11 | **856-232-4561** 3:6 |
| **team's** 12:1 | **T-O-Z-E-R** 5:2 | 6:21 8:8 9:18 9:22 10:11,17 | **1** | **856-546-1100** 2:23 |
| **technically** 7:19 | **U** | 10:25 11:7,16 12:11,18 13:11 | **1** 1:15 20:21 | |
| **tell** 5:16 6:24 8:25 | **unauthorized** 5:15 8:15 | 13:23 14:3,17 15:11 17:9,20 | **10th** 5:3 | |
| **testified** 5:3 9:17 14:17 | **underlie** 4:10 | **West's** 12:25 19:6,11 | **11th** 12:23 | |
| **testimony** 5:1 13:7 14:23 | **unit** 4:19,25 6:18 9:24 10:1 | **whatsoever** 12:11 | **11:36** 2:10 | |
| 20:6 | 10:12 11:2,6,8 11:13 12:5,18 | **White** 2:21 | **1337** 3:11 | |
| **Theresa** 2:6 20:3 | 12:19,20 14:15 14:16,19 15:10 | **William** 1:9 10:5 10:7 19:14,14 | **18th** 17:15 | |
| | | **willingness** | **196** 5:5 | |
| | | | **1997** 4:22 6:17 12:23 | |
| | | | **1998** 17:15 | |
| | | | **2** | |
| | | | **200** 5:5 | |
| | | | **2009** 1:15 5:4 20:21 | |
| | | | **2010** 20:20 | |