UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
Civil Action No. 08-1295

RECEIVED
JAN 28 2010

In Regard to the Matter of:

Bayside State Prison
Litigation

OPINION/REPORT
OF THE
SPECIAL MASTER

BARRY SWEETEN

-vs-

WILLIAM H. FAUVER, et al,

    Defendants.

\* \* \* \*

FRIDAY, DECEMBER 11, 2009

\* \* \* \*

BEFORE THE HONORABLE JOHN W. BISSELL, SPECIAL MASTER

```
 1
 2
 3
 4
 5              Transcript of proceedings in the above
 6  matter taken by Theresa O. Mastroianni, Certified
 7  Court Reporter, license number 30X100085700, and
 8  Notary Public of the State of New Jersey at the
 9  United States District Court House, One Gerry Plaza,
10  Camden, New Jersey, 08102, commencing at 11:33 AM.
11
12
13
14
15
16
17
18
19              MASTROIANNI & FORMAROLI, INC.
20          Certified Court Reporting & Videoconferencing
21                 251 South White Horse Pike
22                  Audubon, New Jersey 08106
23                       856-546-1100
24
25
```

```
 1
 2    A P P E A R A N C E S:
 3
 4
          LOUGHRY & LINDSAY, ESQUIRES
 5        BY:  JUSTIN T. LOUGHRY, ESQUIRE
               - and -
 6        BY:  LAWRENCE D. LINDSAY
          330 MARKET STREET
 7        CAMDEN, NEW JERSEY 08102
          856-968-9201
 8        ATTORNEYS FOR THE PLAINTIFFS
 9
10
          ROSELLI, GRIEGEL, LOZIER & LAZZARO, PC
11        BY:  MARK ROSELLI, ESQUIRE
               - and -
12        BY:  KENNETH W. LOZIER, ESQUIRE
          1337 STATE HIGHWAY 33
13        HAMILTON SQUARE, NEW JERSEY  08690
          609-586-2257
14        ATTORNEYS FOR THE DEFENDANTS
15
16
17
18
19
20
21
22
23
24
25
```

1          JUDGE BISSELL:  We are reopening
2    proceedings in the matter of Barry Sweeten versus
3    William Fauver, et al.  Docket number 08-1295 for the
4    purpose of stating the Special Master's determination
5    in that matter.
6               This opinion/report is being issued
7    pursuant to the directives of the Order of Reference
8    to a Special Master and the Special Master's
9    Agreement and the guiding principles of law which
10   underlie this decision to be applied to the facts
11   upon which it is based as set forth in the jury
12   instructions in the Walker and Mejias jury charges to
13   the extent applicable to the allegations of Mr.
14   Sweeten.
15              As finalized after review under Local
16   Civil Rule 52.1, this transcript will constitute the
17   written report required under paragraph seven of the
18   Order of Reference to a Special Master.
19              Mr. Sweeten was in D Tent at the time
20   that it was searched on August 14, 1997.  He had
21   arrived in D Tent in late July of that year.
22              He testified as to certain incidents
23   that occurred to him regarding alleged assaults by
24   SOG officers during the course of his and his fellow
25   inmates' extraction from D Tent for purposes of

1  searches.  In fact, at some point relatively soon
2  after the events which he alleges took place, he even
3  prepared a map of the activities of the officers in
4  the tent on the date in question, including
5  references to locations where he was assaulted in the
6  presence of other inmates in the tent and others.
7  This diagram was introduced as P-160 in evidence in
8  the case.
9              His description of the assaults
10 perpetrated upon him, varying slightly at various
11 segments of his testimony, I think can be put
12 together from certain excerpts of his testimony which
13 I will read into the record at this time.
14             He testified on January 20th, 2009 and
15 the first of these entries begins at page 11 and runs
16 from line six through 15.  SOG was already there and
17 had issued instructions and the testimony now begins:
18             "Question:  And what happened to you,
19 sir?
20             "Answer:  When they got around to my
21 area, I was told to get up off the floor and I
22 started getting dressed.  That's when I received the
23 first blow over onto the bed.
24             "Question:  What kind of a blow was it?
25             "Answer:  Just like a push and then

1  forward motion onto the bed.  Then I was kicked in
2  the ribs.  And then two more times on the way going
3  out the door.  A total of three times."
4            He testifies further on the subject of
5  these assaults now with reference to P-160, his
6  diagram.
7            "Question:  Down at the bottom on the
8  right you have a K, location where --
9            "Answer:  Where I was last kicked.
10           "Question:  Where is that on the actual
11 diagram?
12           "Answer:  Right near the door entrance
13 where the steps are to go down and come in.  And I
14 was handcuffed while I was kicked in the back and
15 almost fell flat on my face as I was going out the
16 door.
17           "Question:  Now, further up the top you
18 have on the top left under D Tent --
19           "Answer:  Yes.
20           "Question:  -- position where I was
21 first kicked?
22           "Answer:  Yes, that's right next to my
23 bed area.
24           "Question:  Is that the kick you
25 described in the back?

```
 1                  "Answer:  Yes.
 2                  "Question:  I'm trying to get the
 3      chronology down.  You got pushed onto your bed, and
 4      then you got kicked in the back?
 5                  "Answer:  Yes."
 6                  At that point he then talks about the
 7      extent of the pain that was inflicted.  There was
 8      some pain inflicted from the assault itself.  He said
 9      that became exacerbated as a result of having to sit
10      in the gym later, but that as well he had a
11      pre-existing back pain condition from warehouse work
12      that he used to do involving a lot of heavy lifting.
13                  While we're on this subject at this
14      point, because I am going to make a determination
15      that he has made out a cause of action here, I will
16      tell you that the injuries which were predominantly
17      to his back as a result of the assaults perpetrated
18      upon him aggravated a pre-existing condition.  But
19      over time this assault was not a significant
20      contributor to any long-lasting effects.  Any
21      long-lasting effects are from the pre-existing
22      condition itself.  However, there is no doubt that
23      pain was inflicted at the time and that it
24      exacerbated an ongoing back pain problem.  It
25      eventually abated with the initial ongoing condition
```

1    then continuing.

2                Turning now to the alleged assaults as

3    they took place, page 21 beginning at line seven,

4    that testimony continues.

5                "Question:  Sir, you were describing

6    the assault.  You got kicked in the back.  Were you

7    on the ground then?

8                "Answer:  Yes, I was.

9                "Question:  What happened next?

10               "Answer:  That was when they told me to

11   get up off the ground and get dressed.

12               "Question:  Did you do that?

13               "Answer:  Yes, I did everything they

14   told me to do.  There was no reason for them to lay

15   hands upon me.

16               "Question:  Did there come a time when

17   they stepped on your neck?

18               "Answer:  To hold me down until they

19   were ready to put the handcuffs on me.

20               "Question:  Where was that?

21               "Answer:  Right alongside the bed,

22   parallel to it.

23               "Question:  Can you describe what they

24   did?

25               "Answer:  He just basically held me

1  down. And I couldn't say nothing. And they just put
2  the handcuffs and they said, get up. And that's when
3  I received the second and third blow going out the
4  door, about in the middle and right near the door.
5         "Question: You said the second and
6  third blow, were they punches or kicks?
7         "Answer: Kicks, because when I took my
8  T-Shirt off, I had black boot marks on my T-shirt.
9         "Question: You didn't describe, I
10 don't think, the standing on your neck. Can you
11 describe that particularly --
12        "Answer: Basically it was like he had
13 his foot as a wedge holding it down just so I
14 wouldn't move. That was basically it. Wasn't like a
15 heavy blow or a kick. The one blow or kick was just
16 to the rib. And I had a small bruise from that."
17        So that's a description of the events
18 that occurred to him.
19        Mr. Sweeten had some indications in his
20 own mind that not only the SOG units were involved,
21 but also Bayside officers in this assault, Bayside
22 officers being dressed similarly. I find, however,
23 that that is not the fact. There is nothing here to
24 indicate that standard operating procedures were not
25 employed in which SOG officers alone entered the

```
 1   units involved, including tents, to perform the
 2   extraction of the inmates involved.
 3            While there was defense testimony that
 4   could lay some doubt as to whether SOG conducted
 5   themselves in this fashion on this occasion, I find
 6   that there is no evidence that is compelling that
 7   would lead me to any conclusion other than the fact
 8   that for reasons merely of exerting authority and
 9   moving Mr. Sweeten out of his bunk area through the
10   unit and out for transport to the gym that these
11   events did occur.  Frankly, I find them totally
12   excessive and unnecessary for the purpose of the
13   extrication of this inmate.  He was a new arrival on
14   the premises, as were almost all occupants of the
15   tents, with no indication that this was a person who
16   would be particularly difficult or violent or
17   resisting or one who would need, shall we say, any
18   type of physical discipline for the purpose of
19   exercising authority.
20            I find, therefore, that under the
21   definitions supplied in the governing jury
22   instructions here, that there was excessive force
23   employed and cruel and unusual punishment inflicted
24   upon Mr. Sweeten.
25            In reaching this decision, I am not
```

1   unmindful of testimony by Mr. Sweeten in the course
2   of his depositions and elsewhere, also as revealed in
3   Exhibit P-170 which was the Internal Affairs
4   Investigator's Report of this incident which is
5   contradictory and, in fact, in some cases truly
6   inaccurate, although under oath.  I've considered
7   this in connection with assessing the credibility of
8   Mr. Sweden.  And I have concluded that although these
9   exposures, mostly in the course of cross-examination,
10  did have an impact on his credibility, as indeed they
11  should have, that impact was not so substantial as to
12  lead the undersigned to a conclusion that Mr. Sweeten
13  did not testify accurately with regard to the events
14  that happened to him in D Tent.  Let me go through
15  those for a moment just so the record is clear.
16              In his deposition, for instance, he
17  denied that he had any prior back injury that was
18  work related.  However, prior to August of 1997 he
19  had advised medical personnel at Bayside State Prison
20  of a chronic back pain and condition.
21              Secondly, he denied that he had any
22  psychiatric problems before his arrival at Bayside
23  Prison.  And that was also in his deposition.  But at
24  trial he admitted that he had had such psychiatric
25  problems, including, as best I can recall, a bipolar

1    condition.
2              In his deposition he had denied any
3    prior suicide attempts before his arrival at Bayside,
4    although he acknowledged that a suicide attempt
5    ensued at Bayside several months after the lockdown.
6    However, on cross-examination it was revealed and he
7    had to acknowledge, this is during the trial, that in
8    1996 he had made a suicide attempt at the Gloucester
9    County Jail.  He had to make that admission either at
10   his trial or his deposition after having been
11   confronted with that event.
12             Finally, when confronted with charges
13   that were brought against him for altering medical
14   forms, in order, among other things, to secure the
15   privileges of a lower bunk with a double mattress, he
16   denied guilt regarding the altering of those forms
17   and continued to do so here before this Special
18   Master.  However, in Exhibit P-170 a report of his
19   interview with Internal Affairs reveals that after
20   initially denying it, he eventually admitted that he
21   had altered those forms in an incident that involved
22   mail coming back and forth from the prison between
23   him and his mother.
24             So these were all events that did,
25   indeed, have an impact upon Mr. Sweeten's

1  credibility.  However, I find that his precise
2  testimony with regard to the events that transpired
3  before me, without any efforts to embellish, enhance
4  or exaggerate either the punishment inflicted or its
5  results, has that ring of truth that leads me to
6  conclude that he has established his claim here.
7              There was, indeed, excessive,
8  unnecessary and sadistic force imposed upon Mr.
9  Sweeten within the comtemplation of the jury
10 instructions in Walker and Mejias that apply.
11 However, in light of the fact that the striking of
12 Mr. Sweeten was neither prolonged, repeated, nor
13 particularly severe in its consequences, while
14 actionable for recovery of compensatory damages, I do
15 not find that this assault visited upon him rose to
16 the level of being so egregious as to support a claim
17 for punitive damages, at least against the
18 unidentified officers who were with him and who
19 inflicted the injuries involved.
20             Finally, although not every item of
21 evidence has been discussed in this opinion/report,
22 all evidence presented to the Special Master was
23 reviewed and considered.  I do want to add quickly at
24 this point, however, because it will come up in my
25 forthcoming decisions in their own cases, that I

1   considered also the testimony submitted in support of
2   Mr. Sweeten's case by plaintiffs Andre Jarrells and
3   Robin Lewis who were also occupants of D Tent at the
4   time of this incident.  Their testimony, however, is
5   so inherently incredible, as the decisions in those
6   cases will reveal, that I find it lent no support to
7   Mr. Sweeten's case.  However, as noted above, he
8   prevailed without it.
9              I find the injury here was actionable.
10  I find that the injury was acute initially, but did
11  not remain a part of Mr. Sweeten's permanent back
12  condition, that being something which preexisted.  I
13  note also that the record reveals that there were no
14  substantial restrictions on Mr. Sweeten's activities
15  after the events in question.
16             Accordingly, I recommend in this report
17  that the District Court enter an award of
18  compensatory damages in the amount of $3,500 in
19  Mr. Sweeten's favor.
20
21
22
23
24
25

1           C E R T I F I C A T E

2

3       I, Theresa O. Mastroianni, a Notary Public and

4   Certified Shorthand Reporter of the State of New

5   Jersey, do hereby certify that the foregoing is a

6   true and accurate transcript of the testimony as

7   taken stenographically by and before me at the time,

8   place, and on the date hereinbefore set forth.

9       I DO FURTHER CERTIFY that I am neither a

10  relative nor employee nor attorney nor counsel of any

11  of the parties to this action, and that I am neither

12  a relative nor employee of such attorney or counsel,

13  and that I am not financially interested in the

14  action.

15

16

17

18

19  *Theresa O. Mastroianni*
    Theresa O. Mastroianni, C.S.R.
20  Notary Public, State of New Jersey
    My Commission Expires May 5, 2010
21  Certificate No. XI0857
    Date: December 15, 2009
22

23

24

25

## A

abated 7:25
accurate 15:6
accurately 11:13
acknowledge 12:7
acknowledged 12:4
action 1:2 7:15 15:11,14
actionable 13:14 14:9
activities 5:3 14:14
actual 6:10
acute 14:10
add 13:23
admission 12:9
admitted 11:24 12:20
advised 11:19
Affairs 11:3 12:19
aggravated 7:18
Agreement 4:9
al 1:9 4:3
allegations 4:13
alleged 4:23 8:2
alleges 5:2
alongside 8:21
altered 12:21
altering 12:13 12:16
amount 14:18
Andre 14:2
Answer 5:20,25 6:9,12,19,22 7:1,5 8:8,10,13 8:18,21,25 9:7 9:12
applicable 4:13
applied 4:10
apply 13:10
area 5:21 6:23 10:9

arrival 10:13 11:22 12:3
arrived 4:21
assault 7:8,19 8:6 9:21 13:15
assaulted 5:5
assaults 4:23 5:9 6:5 7:17 8:2
assessing 11:7
attempt 12:4,8
attempts 12:3
attorney 15:10 15:12
ATTORNEYS 3:8,14
Audubon 2:22
August 4:20 11:18
authority 10:8 10:19
award 14:17

## B

back 6:14,25 7:4 7:11,17,24 8:6 11:17,20 12:22 14:11
Barry 1:7 4:2
based 4:11
basically 8:25 9:12,14
Bayside 1:5 9:21 9:21 11:19,22 12:3,5
bed 5:23 6:1,23 7:3 8:21
beginning 8:3
begins 5:15,17
best 11:25
bipolar 11:25
BISSELL 1:21 4:1
black 9:8
blow 5:23,24 9:3 9:6,15,15
boot 9:8

bottom 6:7
brought 12:13
bruise 9:16
bunk 10:9 12:15

## C

C 3:2 15:1,1
Camden 2:10 3:7
case 5:8 14:2,7
cases 11:5 13:25 14:6
cause 7:15
certain 4:22 5:12
Certificate 15:21
Certified 2:6,20 15:4
certify 15:5,9
charges 4:12 12:12
chronic 11:20
chronology 7:3
Civil 1:2 4:16
claim 13:6,16
clear 11:15
come 6:13 8:16 13:24
coming 12:22
commencing 2:10
Commission 15:20
compelling 10:6
compensatory 13:14 14:18
comtemplation 13:9
conclude 13:6
concluded 11:8
conclusion 10:7 11:12
condition 7:11 7:18,22,25 11:20 12:1

14:12
conducted 10:4
confronted 12:11,12
connection 11:7
consequences 13:13
considered 11:6 13:23 14:1
constitute 4:16
continued 12:17
continues 8:4
continuing 8:1
contradictory 11:5
contributor 7:20
counsel 15:10,12
County 12:9
course 4:24 11:1 11:9
Court 1:1 2:7,9 2:20 14:17
credibility 11:7 11:10 13:1
cross-examina... 11:9 12:6
cruel 10:23
C.S.R 15:19

## D

D 3:6 4:19,21,25 6:18 11:14 14:3
damages 13:14 13:17 14:18
date 5:4 15:8,21
December 1:15 15:21
decision 4:10 10:25
decisions 13:25 14:5
Defendants 1:10 3:14
defense 10:3
definitions

10:21
denied 11:17,21 12:2,16
denying 12:20
deposition 11:16 11:23 12:2,10
depositions 11:2
describe 8:23 9:9,11
described 6:25
describing 8:5
description 5:9 9:17
determination 4:4 7:14
diagram 5:7 6:6 6:11
difficult 10:16
directives 4:7
discipline 10:18
discussed 13:21
District 1:1,2 2:9 14:17
Docket 4:3
door 6:3,12,16 9:4,4
double 12:15
doubt 7:22 10:4
dressed 5:22 8:11 9:22

## E

E 3:2,2 15:1,1
effects 7:20,21
efforts 13:3
egregious 13:16
either 12:9 13:4
embellish 13:3
employed 9:25 10:23
employee 15:10 15:12
enhance 13:3
ensued 12:5
enter 14:17
entered 9:25

entrance 6:12
entries 5:15
ESQUIRE 3:5
  3:11,12
ESQUIRES 3:4
established 13:6
et 1:9 4:3
event 12:11
events 5:2 9:17
  10:11 11:13
  12:24 13:2
  14:15
eventually 7:25
  12:20
evidence 5:7
  10:6 13:21,22
exacerbated 7:9
  7:24
exaggerate 13:4
excerpts 5:12
excessive 10:12
  10:22 13:7
exercising 10:19
exerting 10:8
Exhibit 11:3
  12:18
Expires 15:20
exposures 11:9
extent 4:13 7:7
extraction 4:25
  10:2
extrication
  10:13

**F**
F 15:1
face 6:15
fact 5:1 9:23
  10:7 11:5
  13:11
facts 4:10
fashion 10:5
Fauver 1:9 4:3
favor 14:19
fell 6:15
fellow 4:24

finalized 4:15
Finally 12:12
  13:20
financially
  15:13
find 9:22 10:5
  10:11,20 13:1
  13:15 14:6,9
  14:10
first 5:15,23
  6:21
flat 6:15
floor 5:21
foot 9:13
force 10:22 13:8
foregoing 15:5
FORMAROLI
  2:19
forms 12:14,16
  12:21
forth 4:11 12:22
  15:8
forthcoming
  13:25
forward 6:1
Frankly 10:11
FRIDAY 1:15
further 6:4,17
  15:9

**G**
Gerry 2:9
getting 5:22
Gloucester 12:8
go 6:13 11:14
going 6:2,15
  7:14 9:3
governing 10:21
GRIEGEL 3:10
ground 8:7,11
guiding 4:9
guilt 12:16
gym 7:10 10:10

**H**
H 1:9

HAMILTON
  3:13
handcuffed 6:14
handcuffs 8:19
  9:2
hands 8:15
happened 5:18
  8:9 11:14
heavy 7:12 9:15
held 8:25
hereinbefore
  15:8
HIGHWAY
  3:12
hold 8:18
holding 9:13
HONORABLE
  1:21
Horse 2:21
House 2:9

**I**
impact 11:10,11
  12:25
imposed 13:8
inaccurate 11:6
incident 11:4
  12:21 14:4
incidents 4:22
including 5:4
  10:1 11:25
incredible 14:5
indicate 9:24
indication 10:15
indications 9:19
inflicted 7:7,8
  7:23 10:23
  13:4,19
inherently 14:5
initial 7:25
initially 12:20
  14:10
injuries 7:16
  13:19
injury 11:17
  14:9,10

inmate 10:13
inmates 4:25 5:6
  10:2
instance 11:16
instructions
  4:12 5:17
  10:22 13:10
interested 15:13
Internal 11:3
  12:19
interview 12:19
introduced 5:7
Investigator's
  11:4
involved 9:20
  10:1,2 12:21
  13:19
involving 7:12
issued 4:6 5:17
item 13:20

**J**
Jail 12:9
January 5:14
Jarrells 14:2
Jersey 1:2 2:8,10
  2:22 3:7,13
  15:5,20
JOHN 1:21
JUDGE 4:1
July 4:21
jury 4:11,12
  10:21 13:9
JUSTIN 3:5

**K**
K 6:8
KENNETH 3:12
kick 6:24 9:15
  9:15
kicked 6:1,9,14
  6:21 7:4 8:6
kicks 9:6,7
kind 5:24

**L**

late 4:21
law 4:9
LAWRENCE
  3:6
lay 8:14 10:4
LAZZARO 3:10
lead 10:7 11:12
leads 13:5
left 6:18
lent 14:6
level 13:16
Lewis 14:3
license 2:7
lifting 7:12
light 13:11
LINDSAY 3:4,6
line 5:16 8:3
Litigation 1:6
Local 4:15
location 6:8
locations 5:5
lockdown 12:5
long-lasting
  7:20,21
lot 7:12
LOUGHRY 3:4
  3:5
lower 12:15
LOZIER 3:10
  3:12

**M**
mail 12:22
map 5:3
MARK 3:11
MARKET 3:6
marks 9:8
Master 1:6,21
  4:8,18 12:18
  13:22
Master's 4:4,8
Mastroianni 2:6
  2:19 15:3,19
matter 1:4 2:6
  4:2,5
mattress 12:15

| | | | | |
|---|---|---|---|---|
| medical 11:19 12:13<br>Mejias 4:12 13:10<br>merely 10:8<br>middle 9:4<br>mind 9:20<br>moment 11:15<br>months 12:5<br>mother 12:23<br>motion 6:1<br>move 9:14<br>moving 10:9<br><br>**N**<br>N 3:2<br>near 6:12 9:4<br>neck 8:17 9:10<br>need 10:17<br>neither 13:12 15:9,11<br>new 1:2 2:8,10 2:22 3:7,13 10:13 15:4,20<br>Notary 2:8 15:3 15:20<br>note 14:13<br>noted 14:7<br>number 2:7 4:3<br><br>**O**<br>O 2:6 15:3,19<br>oath 11:6<br>occasion 10:5<br>occupants 10:14 14:3<br>occur 10:11<br>occurred 4:23 9:18<br>officers 4:24 5:3 9:21,22,25 13:18<br>ongoing 7:24,25<br>operating 9:24<br>opinion/report 1:5 4:6 13:21 | order 4:7,18 12:14<br><br>**P**<br>P 3:2,2<br>page 5:15 8:3<br>pain 7:7,8,11,23 7:24 11:20<br>paragraph 4:17<br>parallel 8:22<br>part 14:11<br>particularly 9:11 10:16 13:13<br>parties 15:11<br>PC 3:10<br>perform 10:1<br>permanent 14:11<br>perpetrated 5:10 7:17<br>person 10:15<br>personnel 11:19<br>physical 10:18<br>Pike 2:21<br>place 5:2 8:3 15:8<br>plaintiffs 3:8 14:2<br>Plaza 2:9<br>point 5:1 7:6,14 13:24<br>position 6:20<br>precise 13:1<br>predominantly 7:16<br>preexisted 14:12<br>premises 10:14<br>prepared 5:3<br>presence 5:6<br>presented 13:22<br>prevailed 14:8<br>pre-existing 7:11,18,21<br>principles 4:9<br>prior 11:17,18 | 12:3<br>prison 1:5 11:19 11:23 12:22<br>privileges 12:15<br>problem 7:24<br>problems 11:22 11:25<br>procedures 9:24<br>proceedings 2:5 4:2<br>prolonged 13:12<br>psychiatric 11:22,24<br>Public 2:8 15:3 15:20<br>punches 9:6<br>punishment 10:23 13:4<br>punitive 13:17<br>purpose 4:4 10:12,18<br>purposes 4:25<br>pursuant 4:7<br>push 5:25<br>pushed 7:3<br>put 5:11 8:19 9:1<br>P-160 5:7 6:5<br>P-170 11:3 12:18<br><br>**Q**<br>question 5:4,18 5:24 6:7,10,17 6:20,24 7:2 8:5 8:9,12,16,20 8:23 9:5,9 14:15<br>quickly 13:23<br><br>**R**<br>R 3:2 15:1<br>reaching 10:25<br>read 5:13<br>ready 8:19<br>reason 8:14<br>reasons 10:8 | recall 11:25<br>received 5:22 9:3<br>recommend 14:16<br>record 5:13 11:15 14:13<br>recovery 13:14<br>reference 4:7,18 6:5<br>references 5:5<br>regard 1:4 11:13 13:2<br>regarding 4:23 12:16<br>related 11:18<br>relative 15:10,12<br>relatively 5:1<br>remain 14:11<br>reopening 4:1<br>repeated 13:12<br>report 4:17 11:4 12:18 14:16<br>Reporter 2:7 15:4<br>Reporting 2:20<br>required 4:17<br>resisting 10:17<br>restrictions 14:14<br>result 7:9,17<br>results 13:5<br>reveal 14:6<br>revealed 11:2 12:6<br>reveals 12:19 14:13<br>review 4:15<br>reviewed 13:23<br>rib 9:16<br>ribs 6:2<br>right 6:8,12,22 8:21 9:4<br>ring 13:5<br>Robin 14:3<br>rose 13:15 | ROSELLI 3:10 3:11<br>Rule 4:16<br>runs 5:15<br><br>**S**<br>S 3:2<br>sadistic 13:8<br>searched 4:20<br>searches 5:1<br>second 9:3,5<br>Secondly 11:21<br>secure 12:14<br>segments 5:11<br>set 4:11 15:8<br>seven 4:17 8:3<br>severe 13:13<br>Shorthand 15:4<br>significant 7:19<br>similarly 9:22<br>sir 5:19 8:5<br>sit 7:9<br>six 5:16<br>slightly 5:10<br>small 9:16<br>SOG 4:24 5:16 9:20,25 10:4<br>soon 5:1<br>South 2:21<br>Special 1:6,21 4:4,8,8,18 12:17 13:22<br>SQUARE 3:13<br>standard 9:24<br>standing 9:10<br>started 5:22<br>State 1:5 2:8 3:12 11:19 15:4,20<br>States 1:1 2:9<br>stating 4:4<br>stenographica... 15:7<br>stepped 8:17<br>steps 6:13<br>STREET 3:6 |

| | | | |
|---|---|---|---|
| **striking** 13:11 | **top** 6:17,18 | **want** 13:23 | **33** 3:12 |
| **subject** 6:4 7:13 | **total** 6:3 | **warehouse** 7:11 | **330** 3:6 |
| **submitted** 14:1 | **totally** 10:11 | **Wasn't** 9:14 | |
| **substantial** | **transcript** 2:5 | **way** 6:2 | **5** |
| 11:11 14:14 | 4:16 15:6 | **wedge** 9:13 | **5** 15:20 |
| **suicide** 12:3,4,8 | **transpired** 13:2 | **we're** 7:13 | **52.1** 4:16 |
| **supplied** 10:21 | **transport** 10:10 | **White** 2:21 | |
| **support** 13:16 | **trial** 11:24 12:7 | **William** 1:9 4:3 | **6** |
| 14:1,6 | 12:10 | **work** 7:11 11:18 | **609-586-2257** |
| **Sweden** 11:8 | **true** 15:6 | **wouldn't** 9:14 | 3:13 |
| **Sweeten** 1:7 4:2 | **truly** 11:5 | **written** 4:17 | |
| 4:14,19 9:19 | **truth** 13:5 | | **8** |
| 10:9,24 11:1 | **trying** 7:2 | **X** | **856-546-1100** |
| 11:12 13:9,12 | **Turning** 8:2 | **XIO857** 15:21 | 2:23 |
| **Sweeten's** 12:25 | **two** 6:2 | | **856-968-9201** |
| 14:2,7,11,14 | **type** 10:18 | **Y** | 3:7 |
| 14:19 | **T-Shirt** 9:8,8 | **year** 4:21 | |
| **T** | **U** | **$** | |
| **T** 3:5 15:1,1 | **underlie** 4:10 | **$3,500** 14:18 | |
| **taken** 2:6 15:7 | **undersigned** | | |
| **talks** 7:6 | 11:12 | **0** | |
| **tell** 7:16 | **unidentified** | **08-1295** 1:2 4:3 | |
| **tent** 4:19,21,25 | 13:18 | **08102** 2:10 3:7 | |
| 5:4,6 6:18 | **unit** 10:10 | **08106** 2:22 | |
| 11:14 14:3 | **United** 1:1 2:9 | **08690** 3:13 | |
| **tents** 10:1,15 | **units** 9:20 10:1 | | |
| **testified** 4:22 | **unmindful** 11:1 | **1** | |
| 5:14 | **unnecessary** | **11** 1:15 5:15 | |
| **testifies** 6:4 | 10:12 13:8 | **11:33** 2:10 | |
| **testify** 11:13 | **unusual** 10:23 | **1337** 3:12 | |
| **testimony** 5:11 | | **14** 4:20 | |
| 5:12,17 8:4 | **V** | **15** 5:16 15:21 | |
| 10:3 11:1 13:2 | **various** 5:10 | **1996** 12:8 | |
| 14:1,4 15:6 | **varying** 5:10 | **1997** 4:20 11:18 | |
| **Theresa** 2:6 15:3 | **versus** 4:2 | | |
| 15:19 | **Videoconfere...** | **2** | |
| **things** 12:14 | 2:20 | **20th** 5:14 | |
| **think** 5:11 9:10 | **violent** 10:16 | **2009** 1:15 5:14 | |
| **third** 9:3,6 | **visited** 13:15 | 15:21 | |
| **three** 6:3 | **vs** 1:8 | **2010** 15:20 | |
| **time** 4:19 5:13 | | **21** 8:3 | |
| 7:19,23 8:16 | **W** | **251** 2:21 | |
| 14:4 15:7 | **W** 1:21 3:12 | | |
| **times** 6:2,3 | **Walker** 4:12 | **3** | |
| **told** 5:21 8:10,14 | 13:10 | **30X100085700** | |
| | | 2:7 | |